**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-CV-_____-___-___

AMG NATIONAL CORP., a Colorado corporation,
AMG NATIONAL TRUST BANK,

      Plaintiffs,

v.

DAVID M. WRIGHT and KELLY L. WRIGHT,

      Defendants.

---

## **COMPLAINT**

---

      Plaintiffs AMG National Corp. and AMG National Trust Bank, by and through their undersigned counsel, submit their Complaint against Defendants David M. Wright and Kelly L. Wright, as follows:

### **INTRODUCTION**

      1.     David M. Wright ("D. Wright") is the former President of Finance and a director of AMG National Trust Bank, a commercial bank wholly owned by AMG National Corp. D. Wright also is the former President and Chief Executive Officer ("CEO"), as well as a director, of AMG National Corp. In conjunction with his employment and board positions, D. Wright agreed to maintain, both during and following his employment, the confidential information of AMG National Corp. and AMG National Trust Bank (collectively, "AMG") and refrain from disparaging AMG. D. Wright repeatedly and egregiously violated his agreements and duties after his employment and directorship ended. This lawsuit requests damages and equitable relief in the form of, among other things, an order enjoining D. Wright from violating the agreements and his fiduciary duties.

### **PARTIES**

      2.     Plaintiff AMG National Corp. (the "Corporation") is a corporation incorporated in the State of Colorado with a principal place of business at 6295 Greenwood Plaza Blvd., Greenwood Village, CO 80111. The Corporation is a financial services holding company.

3. Plaintiff AMG National Trust Bank (the "Bank") is a national bank wholly owned by AMG National Corp. The Bank's principal place of business is at 6295 Greenwood Plaza Blvd., Greenwood Village, CO 80111.

4. On information and belief, Defendant D. Wright is a citizen of the State of Washington, and the address of his residence is 9176 Holman Rd. NW., Apt. 231, Seattle, WA 98117.

5. On information and belief, Defendant Kelly L. Wright ("K. Wright") is D. Wright's spouse, she is a citizen of the State of Washington, and the address of her residence is 9176 Holman Rd. NW., Apt. 231, Seattle, WA 98117.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. The value of the equitable relief AMG seeks exceeds $75,000. The value of the legal relief AMG seeks will exceed $75,000.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to AMG's claims occurred in the District of Colorado.

## FACTUAL ALLEGATIONS

### The Bank Employs D. Wright, and the Parties Execute Confidentiality and Nondisparagement Agreements

8. D. Wright became a Bank employee in 2002. D. Wright eventually became the Bank's President of Finance and a member of its Board of Directors. He also became President and CEO, as well as a director, of AMG National Corp.

9. In conjunction with D. Wright's employment and director roles, AMG and D. Wright executed several confidentiality agreements. The most recent, dated February 1, 2013, is entitled "AMG NATIONAL TRUST BANK Confidential Information and Employee Agreement" (the "Employee Agreement"). The Employee Agreement is binding on D. Wright's personal representatives, heirs, executors, administrators, assigns, successors in interest, and other legal representatives, and is attached hereto as Exhibit A.

10. The Employee Agreement provides that, among other purposes, it is designed to "*Protect confidential and other proprietary AMG information.* Through the expenditure of significant time, effort and money, AMG has developed and purchased important proprietary information, much of which is unique to the industry. AMG's proprietary client base and other confidential, proprietary information, benefit all AMG employees as well as its shareholders. Employees benefit through having an environment in which they have the opportunity to excel

2

and through training and resources that allow employees to work, learn, grow professionally, service clients and grow the bank. Employees' inappropriate use or disclosure of AMG's information would harm our business, co-workers and shareholders." The Employee Agreement also acknowledges that D. Wright "has or inevitably will have access to trade secrets and confidential information that would be valuable or useful to AMG's competitors."

11. The Employee Agreement defines the term "confidential information" as: "Except for information that is knowledge of the general public and was made public other than through [D. Wright's] or another person's unauthorized actions, all information obtained from or through AMG, about or affecting AMG, or otherwise arising out of or in connection with [D. Wright's] employment with AMG…." The Employee Agreement provides that "confidential information retains its confidential nature regardless of how it was obtained, whether it was generated before or after the date of this Agreement, and whether or not [D. Wright] conceived, originated, discovered, developed, created, heard, saw (in writing or otherwise), received, or otherwise obtained the confidential information."

12. More specifically, the Employee Agreement provides that "confidential information includes, without limitation", "i) all information about AMG clients (whether independents or part of a corporate program and whether current or former clients), client corporations, and their representatives, including, without limitation, client lists, contracts, fees, … ; the personal financial affairs, survey responses, information, needs, objectives, circumstances and opinions of such persons; and their relationships as AMG clients; and the following information if it is obtained from or through AMG, is about or affecting AMG, or otherwise arises out of or in connection with an employee's employment with AMG *unless* the information is general public knowledge and the public knowledge was not the result of [D. Wright's] or another person's unauthorized actions: (a) research, designs, discoveries, developments, formulae, concepts, techniques, processes, methods, procedures and other proprietary ideas, including those conceived, originated, discovered or developed by [D. Wright] (whether alone or jointly with others); (b) computer data, programs and models, including all firm-wide and individually prepared models; (c) marketing strategies, techniques, proposals and contacts, including prospect lists; (d) fee information and price lists; (e) contracts and related information; (f) financial information; (g) investment reviews and recommended investments; (h) plans and forecasts; (i) models, manuals and drawings; (j) training methods; (k) compensation and benefit structures and information; (l) information relating to the identity, qualifications, performance and other employment related characteristics or qualities of AMG employees; and (m) all other trade secrets and confidential information."

13. The Employee Agreement additionally states, "Both during and after termination of employment with AMG, [D. Wright] agrees to keep in strictest confidence and trust all confidential information . . . . . [D. Wright] agrees not to, directly or indirectly, use or disclose in any manner confidential information, except as [D. Wright's] normal duties with AMG may require, as required by law or as authorized in writing by AMG. [D. Wright] agrees to not disclose in any manner (including LinkedIn, Facebook, blogs or similar sites) that any person is an AMG client except with the written approval of AMG and the client. [D. Wright] agrees to take all

reasonable precautions to prevent disclosure of confidential information. …" (the "Confidentiality Clause").

14. The Employee Agreement also provides: "<u>Nondisparagement</u>. [D. Wright] agrees to not criticize, disparage, or speak adversely about AMG or its shareholders, officers, directors, employees, or clients (each a "Related Party"), or make any communication, whether oral, written, or otherwise, to any person or entity that has the effect of damaging the professional or personal reputation of, or that otherwise could work to the detriment of AMG or a Related Party. [D. Wright] agrees to not originate, disclose, or otherwise be the source of any negative information about AMG or a Related Party, whether oral, written, or otherwise. [D. Wright] acknowledges that AMG actively enforces this provision through advanced web searches and other means. Employee transfers to AMG any Employee copyright on any web or other published content about AMG or any Related Party other than Employee" (the ("Nondisparagement Clause")).

15. The Employee Agreement provides that "[D. Wright] and AMG acknowledge and agree that client goodwill and relationships have commercial value. They agree that AMG's client relationships and business would be irreparably harmed if AMG's confidential information were disclosed, if the confidential information were used other than as specified in this Agreement, or if Employee violated any of the terms and conditions of this Agreement and that certain circumstances could result in the inevitable disclosure of such confidential information. Accordingly, AMG has the right to seek and obtain an injunction to enforce this Agreement if there is any violation or reasonably threatened violation of this Agreement, in addition to all other rights and remedies available in this Agreement or in law or equity. AMG may seek such relief in any court having jurisdiction. Employee consents to such jurisdiction and relief, agrees that AMG would not be made whole by money damages, and agrees to any injunction necessary to prevent violations of this Agreement. If AMG prevails in any action brought to enforce the terms of this Agreement, whether for an injunction or damages, AMG will be entitled to all reasonable costs and expenses, including reasonable attorney's fees."

16. In conjunction with D. Wright's director positions with the Bank and the Corporation, AMG and D. Wright executed a document entitled "AGREEMENT REGARDING DIRECTOR DUTIES AND CONFIDENTIALITY" (the "Director Agreement"). The Director Agreement is dated March 29, 2004 and is binding on D. Wright and his heirs and personal representatives. The Director Agreement is attached hereto as <u>Exhibit B</u>.

17. The Director Agreement defines "confidential information" as: "(i) any information identified as confidential; (ii) any information relating to the trade secrets of the Company (including without limitation all asset allocation model research and computer models, client, customer, employee and personnel information; training methods; research; designs; discoveries; development; proprietary ideas; formulae; concepts; techniques; processes; methods and procedures; computer data, programs, and models; marketing techniques, contacts and proposals; price lists; contracts; financial information; investment information; plans; forecasts; models; manuals; drawings; and other technical information); (iii) any information relating to the personal financial affairs, information, objectives, circumstances and opinions of any Company client or

4

customer, including all account information; (iv) the fact that discussions or negotiations are taking place concerning a possible relationship between the Company and any other person, and the terms, conditions or other facts with respect to any such possible relationship; and (v) any notes, compilations, analyses, reports or other documents prepared that contain or reflect any such information."

18. The Director Agreement provides that "The Company's Confidential Information shall be and remain its exclusive property," and it limits D. Wright to "us[ing] the Company's Confidential Information only for the purpose of acting as director of the Company and for and not in any way detrimental to the Company or its clients." The Director Agreement further provides that D. Wright "shall not disclose or otherwise furnish to any other person any Company Confidential Information," subject to limited exceptions.

19. The Director Agreement provides that D. Wright "shall be responsible and liable for all damages arising from any disclosures of the Company's Confidential Information or other act that would be a breach of this Agreement as if such disclosure were made or other act were performed by [D. Wright]." The Director Agreement further provides that "There is not an adequate remedy for a loss caused by a breach of this Agreement and the Company shall be irreparably harmed if any of its Confidential Information were disclosed, if the Confidential Information were used other than as specified in this Agreement, or if this Agreement is otherwise breached. Upon any violation or threatened violation of the terms of this Agreement, the Company shall have the right to seek and obtain injunctive relief in any court having proper jurisdiction, in addition to all other rights and remedies available to such party in this Agreement or in law or in equity."

20. D. Wright confirmed his confidentiality obligations to AMG in a Restricted Stock Award Agreement (the "Stock Agreement"), effective January 1, 2013. The Stock Agreement is binding upon D. Wright's "executors, administrators, heirs, successors and assigns." The Stock Agreement is attached hereto as Exhibit C.

21. The Stock Agreement grants D. Wright 15,000 restricted shares of the Corporation, but it provides the shares "are subject to forfeiture . . . upon violation of an employment, confidentiality and/or non-compete agreement with the Company . . . ."

D. Wright Retires from the Bank and Repeatedly Violates
the Employee and Director Agreements

22. D. Wright retired from the Bank and his AMG board positions on April 25, 2016.

23. Thereafter, D. Wright egregiously and repeatedly violated the Confidentiality Clause and Nondisparagement Clause within the Agreement and the Confidentiality Clause in the Director Agreement. D. Wright did so in at least four ways: (a) posting content on webpages he created on a website he and/or K. Wright produced at the URL https://ouranosdatum.com (the "D. Wright Website"); (b) posting content on his personal page on the LinkedIn social network; (c)

5

sending AMG officials, employees, and former employees electronic messages and calling them on the telephone; (d) sending AMG customers, vendors, and affiliates electronic messages and calling them on the telephone.

### Posts to the D. Wright Website

24. D. Wright created and published on the D. Wright Website a webpage entitled "AMG National Trust Bank – Eleven Pillars of a Legal Strategy Used by a Bank Against Employees." This webpage (the "Pillars Webpage") disparaged AMG by stating, for example, that the Bank was "undercapitalized;" had "a legal strategy designed to kill former employees;" used a "blind signature protocol;" was "associated with the deaths of [D. Wright's] mother and eldest brother;" "stole" and "inflated the market;" "neglected standards of fiduciary care;" and "stole [D. Wright's] gold and other funds." The Pillars Webpage also revealed AMG's confidential information by discussing aspects of the Bank's employment practices and legal strategies and the responsibilities of and duties performed by several Bank employees. Because much of the information the webpage supplied in that regard was false and portrayed AMG in a negative light, the provision of such information was also disparaging.

25. D. Wright created and published on the D. Wright Website a webpage entitled "Geothermal Energy, an additional client experience with AMG National Trust Bank." This webpage revealed AMG's confidential information by discussing limited non-public aspects of an investment in which the Bank was involved. Because much of the information the webpage supplied in that regard was false and portrayed AMG in a negative light, the provision of such information was also disparaging. This webpage also accused key Bank employees and AMG officials of incompetency.

26. D. Wright created and published on the D. Wright Website a webpage entitled "Raft River Resource Invested In by AMG's Private Capital Clients." This webpage revealed AMG's confidential information by discussing limited non-public aspects of an investment in which the Bank was involved. Because much of the information the webpage supplied in that regard was false and portrayed AMG in a negative light, the provision of such information was also disparaging. This webpage also accused key Bank employees of incompetency.

27. D. Wright created and published on the D. Wright Website a webpage entitled "The estate plan – a personal view of attempted murder." This webpage associated AMG and its officers, for example, with "murder;" disparaged the Chairman of the Corporation's marriage; alleged corporate improprieties and incompetence, such as willful violations of law; and claimed the Bank is "broken." This webpage was highly disparaging of AMG officials and employees.

28. D. Wright created and published on the D. Wright Website a webpage entitled in part "RIP VAN WINKLE." This webpage falsely alleged that several Bank employees had engaged in wrongful business activity, perjury, and conspiracy to commit murder. It also discussed certain limited aspects of the Bank's business operations. Because much of the information the webpage supplied in that regard was false and portrayed AMG in a negative light, the provision of

6

such information was also disparaging. This webpage also accused key Bank employees of incompetency.

29. D. Wright created and published on the D. Wright Website a webpage entitled "The Estate Plan, Omnia Mea Mecum Porto or 'Shirt sleeves to shirt sleeves in 3 generations.'" This webpage disparaged AMG officials and employees when it, for example, alleged infidelities, incompetency, and malfeasance by Corporation officials and Bank employees. It also violated the Confidentiality Clause within the Agreement by naming clients, employees, former employees, and affiliates of the Bank and personal information about them, including birthdates and home addresses.

30. D. Wright created and published on the D. Wright Website a webpage entitled "In the U.S., the prey, for whom prayers are said, end up broken or dead . . . ." This webpage disparaged AMG officials and employees by, among other things, graphically alleging sexual improprieties, alleging the Chairman is a "serial killer" responsible for multiple murders, and alleging the Bank's current Chief Executive Officer and General Counsel failed to report elder abuse and made "a series of false claims designed to kill [D. Wright's] family through siege and misrepresentations." This webpage further claimed K. Wright has "a $100,000,000 million dollar federal lawsuit in formation."

31. The D. Wright Website remains active. On information and belief, K. Wright assists D. Wright in maintaining the content on the D. Wright Website. D. Wright occasionally removes the above-referenced material, only to later repost the same, substantially similar, or entirely new information to reveal confidential information and make disparaging comments.

32. The above-described material on the D. Wright Website was and is accessible by anyone with an internet connection. No password was or is required to view the above-described material.

33. The material D. Wright posted and continues to post on the D. Wright Website violates the Confidentiality Clause and the Nondisparagement Clause within the Employee Agreement and the Confidentiality Clause in the Director Agreement.

Posts to LinkedIn

34. On August 16, 2019, a client of the Bank called a Bank official to inform the Bank that D. Wright had posted "a very lengthy attack on AMG" to his personal page on the LinkedIn social network regarding a transaction concerning geothermal energy in which AMG had been involved. The information concerned the client.

35. On information and belief, D. Wright has nearly constantly maintained postings on his personal page on the LinkedIn social network criticizing AMG and revealing its confidential information, including, but not limited to, links to webpages about AMG on the D. Wright Website.

36. The information D. Wright posted and continues to post on his personal page on the LinkedIn social network violates the Confidentiality Clause and the Nondisparagement Clause within the Employee Agreement, as well as the Confidentiality Clause in the Director Agreement.

<u>Messages and Calls to AMG Officials and Employees</u>

37. In September and October 2019, D. Wright sent messages through the LinkedIn social network to various AMG employees containing a link to the Pillars Webpage that contained AMG's confidential information and disparaged AMG as described above.

38. On October 28, 2019, D. Wright left a voicemail for a Bank employee in which he stated that the Bank's current Chief Executive Officer and General Counsel was a "criminal" and that the Chairman of the Corporation was a "psychopath" and a "criminal." That same day, he left another voicemail for a different Bank employee alleging that several Bank officials had "misused his signature" at the encouragement of the Chairman of the Corporation.

39. On November 3, 2019, D. Wright left a voicemail for a Bank employee in which he said the management of the Bank was "trying to kill [him]," had made false allegations against him, that the Chairman of the Board was incompetent, that the Bank's Chief Executive Officer and General Counsel had lied and was going to lose her law license. That same day, D. Wright left another disparaging voicemail for a different Bank employee that the Chairman of the Corporation had killed his brother and failed to perform due diligence on a transaction.

40. On November 10, 2019, D. Wright left voicemails for two different Bank employees directing them to the D. Wright Website for material disparaging AMG.

41. On November 26, 2019, D. Wright left a voicemail for a Bank employee stating that various Bank executives had violated fiduciary standards in association with a business transaction.

42. On December 2, 2019, D. Wright left a voicemail for the Bank's Chief Executive Officer and General Counsel that the Chairman of the Corporation is "a fucking punk who beats up women."

43. On December 5, 2019, D. Wright left voicemails for several Bank employees indicating that an AMG official had contracted a venereal disease and that several others had engaged in marital infidelities. That same day, he left a voicemail for another Bank employee indicating that he had "witnessed a lot of illegal behavior" at AMG and directing her to the D. Wright Website for additional disparaging information concerning AMG.

44. On December 17, 2019, D. Wright sent messages through the LinkedIn social network to at least 11 Bank employees directing them to a webpage on the D. Wright Website indicating that officials at AMG were involved in an "attempted murder."

8

45. On January 11, 2020, D. Wright left a voicemail for a Bank employee indicating that the Chairman of the Corporation had engaged in various marital infidelities and had killed D. Wright's mother and brother. D. Wright demanded payment of $50,000,000 "tax free."

46. On February 6, 2020, D. Wright left a voicemail for the Bank's Chief Executive Officer and General Counsel indicating that the Chairman of the Corporation was "one of the worst due diligence officers [he's] ever fucking seen" and a "general fuck up."

47. On March 6, 2020, K. Wright left a voicemail for a Bank employee in which she indicated the amount due to her and D. Wright was $30,000,000, in part because AMG caused her to have a miscarriage.

48. On April 5, 2020, D. Wright left a voicemail for a Bank employee in which he said the Chairman of the Corporation and the Bank's Chief Executive Officer and General Counsel had "created a criminal element in the organization."

49. On July 13, 2020, D. Wright left a voicemail for a Bank employee in which he stated, "this is David Wright and Kelly Wright . . . . AMG National Trust Bank owes me a hundred million dollars. AMG National management has transferred intent to murder my family with evidence across all sorts of platforms." D. Wright then warned numerous AMG officials and employees, whom he identified by name, "are going to fucking prison," and "[a]ll of your net worths will be taken." Screaming, D. Wright then threatened, "I'M GOING TO FUCK YOU UP! YOU THINK I'M JOKING? YOU FUCKERS ARE DEAD! YOU GUYS ARE DEAD! FUCKIN' YOU'RE DEAD!"

50. D. Wright admits that he has made "hundreds" of calls to AMG employees, and, on information and belief, nearly all of the calls disparage AMG's officials and employees.

51. On September 12, 2019, the Arapahoe County, Colorado County Court entered a permanent civil protection order against D. Wright, precluding him from contacting AMG, "its employees, their families, [their] clients, and any business affiliates." However, D. Wright has characterized that order as "garbage" and "ridiculous," continues to defy it, and has indicated an intent to continue calls in the vein of those described above.

52. D. Wright's above-described messages and calls to AMG officials and employees violate the Confidentiality Clause and the Nondisparagement Clause within the Employee Agreement, as well as the Confidentiality Clause in the Director Agreement.

Messages and Calls to AMG Affiliates, Clients, and Customers

53. On October 2, 2019, an AMG business affiliate and potential client notified AMG that D. Wright sent him an unsolicited message on LinkedIn, directing him to the D. Wright Website.

9

54. In June 2020, D. Wright contacted a principal of a financial organization that had merged with the Bank and, in an apparent unsuccessful attempt to stop the merger, disparaged AMG officials and employees.

55. In July 2020, D. Wright sent employees of an AMG business affiliate unsolicited messages on LinkedIn, directing them to the D. Wright Website and demanding payment of $2,000,000.

56. On information and belief, D. Wright has contacted other affiliates, clients, and customers of AMG to disparage AMG and disclose AMG's confidential information.

57. D. Wright's above-described messages and calls to AMG customers and affiliates violate the Confidentiality Clause and the Nondisparagement Clause within the Employee Agreement, as well as the Confidentiality Clause in the Director Agreement.

### D. Wright's Violations of the Employee Agreement and the Director Agreement Harm AMG

58. D. Wright's violations of the Employee Agreement and the Director Agreement have harmed and continue to harm AMG, causing it substantial embarrassment, reputational damage, lost business opportunities, and waste of time and resources, requiring it to incur heightened security costs, attorneys' fees and other expenses.

## CLAIMS FOR RELIEF

### Claim One: Breach of Contract (the Employee Agreement) – Injunction/Reimbursement of Costs and Expenses
(against D. Wright)

59. AMG incorporates the above allegations herein.

60. The Agreement constitutes a contract between AMG and D. Wright.

61. AMG performed its obligations within the Agreement.

62. D. Wright failed to perform his obligations within the Agreement, to wit, the Confidentiality Clause and the Nondisparagement Clause.

63. AMG has been and continues to be harmed as a result.

64. The Agreement provides that "AMG has the right to seek and obtain an injunction to enforce this Agreement if there is any violation or reasonably threatened violation of this Agreement."

10

65. Because D. Wright has violated the Agreement and has threatened to continue to do so, AMG is entitled to an injunction to enforce the Agreement.

66. The Agreement provides that if AMG prevails in any action brought to enforce the terms of this Agreement, whether for an injunction or damages, AMG will be entitled to all reasonable costs and expenses, including reasonable attorneys' fees.

67. AMG is therefore entitled to reimbursement of its reasonable costs and expenses, including reasonable attorneys' fees, for bringing this action.

**Claim Two: Breach of Contract (the Director Agreement) –
Injunction/Damages/Reimbursement of Costs and Expenses**
(against D. Wright)

68. AMG incorporates the above allegations herein.

69. The Director Agreement constitutes a contract between AMG and D. Wright.

70. AMG performed its obligations within the Director Agreement.

71. D. Wright failed to perform his obligations within the Director Agreement, to wit, the Confidentiality Clause.

72. AMG has been and continues to be harmed as a result.

73. The Director Agreement provides that "Upon any violation or threatened violation of the terms of this Agreement, the Company shall have the right to seek and obtain injunctive relief in any court having proper jurisdiction, in addition to all other rights and remedies available to such party in this Agreement or in law or equity."

74. The Director Agreement further provides that D. Wright "shall be responsible and liable for all damages arising from any disclosures of the Company's Confidential Information or other act that would be a breach of this Agreement as if such disclosure were made or other act were performed by [D. Wright]."

75. Because D. Wright has violated the Director Agreement and has threatened to continue to do so, AMG is entitled to an injunction to enforce the Agreement.

76. Because D. Wright's violations of the Director Agreement have damaged AMG, it is entitled to an award of compensatory damages.

77. The Director Agreement provides that if AMG prevails in any action brought to enforce its terms, whether for an injunction or damages, AMG will be entitled to all reasonable costs and expenses, including reasonable attorneys' fees.

78.     AMG is therefore entitled to reimbursement of its reasonable costs and expenses, including reasonable attorneys' fees, for bringing this action.

### Claim Three: Defamation – Injunction/Damages
### (against D. Wright and K. Wright)

79.     AMG incorporates the above allegations herein.

80.     D. Wright and K. Wright have made numerous statements about AMG, its officials, and its employees that tend to subject AMG to public hatred, contempt or ridicule, or cause it to be shunned or avoided, thereby injuring AMG's reputation and reflecting poorly upon its professional integrity.

81.     D. Wright has published such defamatory statements to third parties on the D. Wright Website and through the LinkedIn social network. On information and belief, K. Wright assists D. Wright in maintaining the content on the D. Wright Website.

82.     Through publication of their false statements, D. Wright and K. Wright intended to harm AMG, its officials, and its employees. Alternatively, D. Wright and K. Wright either recognized or should have recognized that publishing false statements was likely to harm AMG, its officials, and its employees.

83.     D. Wright and K. Wright's publication of false statements about AMG has caused special damages, including lost business opportunities, waste of time and resources, and heightened security costs.

### Claim Four: Commercial/Product Disparagement – Injunction/Damages
### (against D. Wright)

84.     AMG incorporates the above allegations herein.

85.     D. Wright has made numerous false statements about AMG, which he has published to third parties on the D. Wright Website and through the LinkedIn social network.

86.     D. Wright's numerous false statements about AMG have been derogatory to AMG, its business in general, and the quality of its financial services.

87.     Through publication of his false statements, D. Wright intended to harm AMG's pecuniary interest. Alternatively, D. Wright either recognized or should have recognized that publishing false statements was likely to harm AMG's pecuniary interest.

88.     D. Wright published false statements about AMG with malice; to wit, he knew the statements were false or acted in reckless disregard for the truth or falsity of the statements.

89.     D. Wright's publication of false statements about AMG has caused special damages, including lost business opportunities, waste of time and resources, and heightened security costs.

### Claim Five: Intentional Interference with Business Relations – Injunction/Damages
### (against D. Wright)

90.     AMG incorporates the above allegations herein.

91.     On information and belief, D. Wright has contacted numerous potential and existing affiliates, clients, and customers of AMG, directing them to defamatory and derogatory statements on the D. Wright Website and otherwise disparaging AMG, its officials, and its employees.

92.     With such communications, D. Wright intended to interfere with AMG's business relations with its existing and potential affiliates, clients, and customers.

93.     D. Wright's communications to existing and potential affiliates, clients, and customers have caused AMG damages in the form of lost business opportunities and waste of time and resources.

### Claim Six: Civil Conspiracy – Damages
### (against D. Wright and K. Wright)

94.     AMG incorporates the above allegations herein.

95.     On information and belief, D. Wright and K. Wright had an agreement to try to obtain tens of millions of dollars from AMG.

96.     To do so, D. Wright and K. Wright, on information and belief, engaged in at least one unlawful overt act, to wit, engaging in criminal extortion by making substantial threats to cause economic hardship to AMG's officials and employees, attempting bank robbery by trying to obtain substantial sums of money from AMG through a campaign of intimidation of its officials and employees, violating the Hobbs Act by obstructing or otherwise affecting AMG's interstate commercial financial services, and/or defaming AMG in violation of the criminal laws of at least one state in which AMG conducts business.

97.     D. Wright and K. Wright have caused damages to AMG in the form of substantial embarrassment, reputational damage, lost business opportunities, waste of time and resources, and heightened security costs.

### REQUESTS FOR RELIEF

AMG requests the Court enter an order:

     A.     Enjoining D. Wright and K. Wright from further publication or disclosure of any type of AMG's confidential information as defined by the Employee Agreement and the Director Agreement;

     B.     Enjoining D. Wright and K. Wright from further disparagement of AMG, its officials, its directors, its employees, and its affiliates, in any forum;

     C.     Requiring D. Wright and K. Wright to remove all mention of AMG, and its officers, directors, employees, and affiliates from the D. Wright Website, his personal LinkedIn social network site, and any posts he made to the LinkedIn social network to which he has access, and enjoining D. Wright and K. Wright from making any further posts about AMG, its officers, directors, employees, and affiliates;

     D.     Awarding AMG compensatory damages;

     E.     Declaring D. Wright has forfeited his restricted shares of the Corporation;

     F.     Requiring D. Wright to reimburse AMG for its costs and expenses in bringing this action, including reasonable attorneys' fees; and

     G.     Granting AMG any other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 21st day of September, 2020.

SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

By: *s/ Michael Brent Case*
Michael Brent Case
and
*s/ Jonathan P. Fero*
Jonathan P. Fero
1120 Lincoln Street, Suite 1308
Denver, CO 80203
(303) 595-0941
bcase@semplelaw.com
jfero@semplelaw.com

*Attorneys for Plaintiffs*
*AMG National Corp., a Colorado corporation, and*
*AMG National Trust Bank*
6295 Greenwood Plaza Blvd.
Greenwood Village, CO 80111